## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | |
| *Plaintiff*, | |
| v. | Case No. 23-cv-262-JEB |
| U.S. DEPARTMENT OF JUSTICE, | |
| *Defendant*. | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Defendant United States Department of Justice hereby respectfully moves for a grant of summary judgment in this Freedom of Information Act case because Defendant has produced all responsive records that can be located through reasonable searches and withheld only non-segregable information properly subject to a Freedom of Information Act Exemption. The reasons for this motion are further set forth in the Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, Defendant's Statement of Material Facts as to Which There Is No Genuine Issue, the declaration of Robert S. Berman, and the *Vaughn* Index of the U.S. Department of Justice.

A proposed order is filed herewith.

Dated:  February 29, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

*/s/ Michael P. Clendenen*
MICHAEL P. CLENDENEN
(D.C. Bar # 1660091)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Tel: (202) 353-0693
Fax: (202) 616-8460
Email: michael.p.clendenen@usdoj.gov

*Counsel for Defendant*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | |
| *Plaintiff*, | |
| v. | Case No. 23-cv-262-JEB |
| U.S. DEPARTMENT OF JUSTICE, | |
| *Defendant*. | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Dated:  February 29, 2024

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

*/s/ Michael P. Clendenen*
MICHAEL P. CLENDENEN
(D.C. Bar # 1660091)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Tel: (202) 353-0693
Fax: (202) 616-8460
Email: michael.p.clendenen@usdoj.gov

*Counsel for Defendant*

TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 2

LEGAL STANDARDS ...................................................................................................... 4

ARGUMENT ..................................................................................................................... 5

    I.    CRT Properly Withheld Information Pursuant to the Attorney Work-Product and Deliberative Process Components of FOIA Exemption 5. ................ 5

        A.    CRT Properly Withheld Material Protected by the Attorney Work-Product Doctrine Created in Preparation for Potential Litigation, Including Litigation Strategy Information and Witness. ........................... 6

        B.    CRT Also Properly Withheld Information Protected by the Deliberative Process Privilege That Would Reveal CRT's Deliberative Process in Making Decisions About Election Monitoring, Investigations, and Litigation. ................................. 9

    II.    CRT Properly Withheld Information Pursuant to the Exemptions 7(A), (C), (D), and (E). ................................................................................ 13

        A.    CRT Properly Withheld Information Under Exemption 7(A). ................ 15

        B.    CRT Properly Withheld Information Under Exemption and 7(C). .......... 18

        C.    CRT Properly Withheld Information Under Exemption 7(D). ................ 20

        D.    CRT Properly Withheld Information Under Exemption 7(E). ................ 22

    III.    CRT Properly Released All Reasonably Segregable Information. ...................... 23

CONCLUSION .................................................................................................................. 24

# TABLE OF AUTHORITIES

***Cases***

*Alyeska Pipeline Serv. Co. v. U.S. EPA*,
    856 F.2d 309 (D.C. Cir. 1998) ........................................................................... 17

*Amuso v. DOJ*,
    600 F. Supp. 2d 78 (D.D.C. 2009) .................................................................... 22

*August v. FBI*,
    328 F.3d 697 (D.C. Cir. 2003) ........................................................................... 4

*Boyd v. Crim. Div. of U.S. DOJ*,
    475 F.3d 381 (D.C. Cir. 2007) ........................................................................... 17

*Brayton v. Off. of U.S. Trade Rep.*,
    641 F.3d 521 (D.C. Cir. 2011) ........................................................................... 4

*Cable News Network, Inc. v. FBI*,
    298 F. Supp. 3d 124 (D.D.C. 2018) .................................................................. 15

*Carter v. U.S. Dep't of Com.*,
    830 F.2d 388 ...................................................................................................... 19

*Citizens for Resp. & Ethics in Wash. v. DOJ*,
    746 F.3d 1082 (D.C. Cir. 2014) .................................................................. 15, 18

*Citizens for Resp. & Ethics in Wash. v. DOJ*,
    No. 20-cv-0212, 2022 WL 4598537 (D.D.C. Sept. 30, 2022) ............... 14, 15, 17, 19

*Clemente v. FBI*,
    867 F.3d 111 (D.C. Cir. 2017) ........................................................................... 14

*Coastal States Gas Corp. v. DOE*,
    617 F.2d 854 (D.C. Cir. 1980) ........................................................................... 10

*Ctr. for Nat'l Sec. Studies v. DOJ*,
    331 F.3d 918 (D.C. Cir. 2003) ..................................................................... 14, 15

*Dep't of Interior v. Klamath Water Users Prot. Ass'n*,
    532 U.S. 1 (2001) ............................................................................................... 9

*DOD v. Fed. Lab. Rels. Auth.*,
    510 U.S. 487 (1994) ........................................................................................... 19

*DOJ v. Landano,*
   508 U.S. 165 (1993) ........................................................................ 20, 21

*DOJ v. Reps. Comm. For Freedom of Press,*
   489 U.S. 749 (1989) ........................................................................ 18, 19

*Dudman Commc'ns. Corp. v. Dep't of Air Force,*
   815 F.2d 1565 (D.C. Cir. 1987) ........................................................... 13

*FBI v. Abramson,*
   456 U.S. 615 (1982) ............................................................................ 14

*Formaldehyde Inst. v. HHS,*
   889 F.2d 1118 (D.C. Cir. 1989) ........................................................... 10

*FTC v. Grolier Inc.,*
   462 U.S. 19 (1983) ................................................................................ 8

*Gilliam v. DOJ,*
   128 F. Supp. 3d 134 (D.D.C. 2015) ...................................................... 4

*Gold Anti-Tr. Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.,*
   762 F. Supp. 2d 123 (D.D.C. 2011) .................................................... 10

*Heggestad v. DOJ,*
   182 F. Supp. 2d 1 (D.D.C. 2000) .......................................................... 6

*Hickman v. Taylor,*
   329 U.S. 495 (1947) .............................................................................. 7

*In re Sealed Case,*
   121 F.3d 729 (D.C. Cir. 1997) .............................................................. 9

*Jefferson v. DOJ, Off. of Pro. Resp.,*
   284 F.3d 172 (D.C. Cir. 2002) ............................................................ 14

*John Doe Agency v. John Doe Corp.,*
   493 U.S. 146 (1989) .............................................................................. 4

*Jordan v. DOJ,*
   591 F.2d 753 (D.C. Cir. 1978) .............................................................. 6

*Juarez v. DOJ,*
   518 F.3d 54 (D.C. Cir. 2008) .............................................................. 23

*Jud. Watch Inc. v. Exp.-Imp. Bank*,
    108 F. Supp. 2d 19 (D.D.C. 2000) ............................................................... 10

*Jud. Watch, Inc. v. DHS*,
    926 F. Supp. 2d 121 (D.D.C. 2013) ................................................................ 6

*Jud. Watch, Inc. v. DOD*,
    715 F.3d 937 (D.C. Cir. 2013) ....................................................................... 5

*Jud. Watch, Inc. v. DOJ*,
    20 F.4th 49 (D.C. Cir. 2021) ............................................................... 9, 10, 11

*Jud. Watch, Inc. v. DOJ*,
    394 F. Supp. 3d 111 (D.D.C. 2019) ............................................................. 18

*Jud. Watch, Inc. v. DOJ*,
    432 F.3d 366 (D.C. Cir. 2005) ................................................................. 7, 24

*Leopold v. DOJ*,
    487 F. Supp. 3d 1 (D.D.C. 2020) .............................................................. 6, 9

*Lesar v. DOJ*,
    636 F.2d 472 (D.C. Cir. 1980) ..................................................................... 20

*Mapother v. DOJ*,
    3 F.3d 1533 (D.C. Cir. 1993) ....................................................................... 15

*Mayer Brown LLP v. IRS*,
    562 F.3d 1190 (D.C. Cir. 2009) ............................................................. 22, 23

*McKinley v. Bd. of Governors of the Fed. Reserve Sys.*,
    647 F.3d 331 (D.C. Cir. 2011) ....................................................................... 6

*Mil. Audit Project v. Casey*,
    656 F.2d 724 (D.C. Cir. 1981) ....................................................................... 5

*Miller v. DOJ*,
    872 F. Supp. 2d 12 (D.D.C. 2012) ................................................................ 4

*Nat'l Ass'n of Criminal Def. Lawyers v. Dep't of Justice Exec. Off. for U.S. Att'ys*,
    844 F.3d 246 (D.C. Cir. 2016) ....................................................................... 5

*Nat'l Sec. Archive Fund, Inc. v. CIA*,
    402 F. Supp. 2d 211 (D.D.C. 2005) ............................................................ 23

iv

*Nat'l Sec. Archive v. CIA,*
    752 F.3d 460 (D.C. Cir. 2014) ............................................... 12

*Nishnic v. DOJ,*
    671 F. Supp. 776 (D.D.C. 1987) ............................................ 20

*Niskanen Ctr. v. Fed. Energy Regul. Comm'n,*
    20 F.4th 787 (D.C. Cir. 2021) .............................................. 19

*NLRB v. Robbins Tire & Rubber Co.,*
    437 U.S. 214 (1978) ........................................................... 15

*NLRB v. Sears, Roebuck & Co.,*
    421 U.S. 132 (1975) ........................................................ 5, 12

*Painting & Drywall Work Pres. Fund, Inc. v. Dep't of Hous. & Urb. Dev.,*
    936 F.2d 1300 (D.C. Cir. 1991) ............................................ 18

*Pfeiffer v. CIA,*
    721 F. Supp. 337 (D.D.C. 1989) ........................................... 10

*Poitras v. U.S. Dep't of Homeland Sec.,*
    303 F. Supp. 3d 136 (D.D.C. 2018) ...................................... 22

*Pratt v. Webster,*
    673 F.2d 408 (D.C. Cir. 1982) ............................................. 14

*Prop. of the People, Inc. v. DOJ,*
    539 F. Supp. 3d 16 (D.D.C. 2021) ..................................... 20, 21

*Pub. Emps. for Envt'l Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.,*
    740 F.3d 195 (D.C. Cir. 2014) ............................................. 13

*Reed v. NLRB,*
    927 F.2d 1249 (D.C. Cir. 1991) ............................................ 18

*Reps. Comm. For Freedom of Press v. FBI,*
    No. 17-cv-1701-RC, 2022 WL 13840088 (D.D.C. Oct. 21, 2022) ......... 22

*Russell v. Dep't of Air Force,*
    682 F.2d 1045 (D.C. Cir. 1982) ............................................. 9

*Ryan v. DOJ,*
    617 F.2d 781 (D.C. Cir. 1980) ............................................. 12

*SafeCard Servs., Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) ................................................................. 5

*Shapiro v. DOJ*,
    Civ. A No. 12-cv-0313 (BAH), 2020 WL 3615511 (D.D.C. July 2, 2020) ........................... 22

*Sussman v. U.S. Marshals Serv.*,
    494 F.3d 1106 (D.C. Cir. 2007) ................................................................. 23

*Swan v. SEC*,
    96 F.3d 498 (D.C. Cir. 1996) ................................................................... 16

*Tax Analysts v. Internal Revenue Serv.*,
    117 F.3d 607 (D.C. Cir. 1997) .............................................................. 6, 24

*Touarsi v. DOJ*,
    78 F. Supp. 3d 332 (D.D.C. 2015) ............................................................... 19

*United States v. Nixon*,
    418 U.S. 683 (1974) ........................................................................... 12

*Weisberg v. DOJ*,
    627 F.2d 365 (D.C. Cir. 1980) ................................................................... 4

*Wisdom v. U.S. Tr. Program*,
    266 F. Supp. 3d 93 (D.D.C. 2017) ............................................................... 8

## Statutes

5 U.S.C. § 552 ................................................................................... *passim*

## Rules

Fed. R. Civ. P. 26(b)(3) ........................................................................... 6

## Other Authorities

Patricia Mazzei & Glen Thrush, *Florida's Secretary of States Is Blocking Federal Monitors from Entering Polling Sites*, N.Y. Times, Nov. 8, 2022,
    https://www.nytimes.com/2022/11/08/us/politics/florida-federal-voting-monitors.html .......... 2

Press Release, *Justice Department to Monitor Polls in 24 States for Compliance with Federal Voting Rights Laws*, DOJ, Office of Public Affairs, Nov. 7, 2022,
    https://www.justice.gov/opa/pr/justice-department-monitor-polls-24-states-compliance-federal-voting-rights-laws ........................................................................ 2

**INTRODUCTION**

In November 2022, during the midterm elections, the Civil Rights Division ("CRT") of the Department of Justice ("DOJ") conducted poll monitoring at election sites across the country, as it routinely does, as part of its enforcement of federal voting rights laws and accessibility laws. Two states declined to allow DOJ poll monitors inside polling places. Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") thereafter submitted a request under the Freedom of Information Act ("FOIA") for records pertaining to CRT's policies regarding state and local officials' refusal to allow poll monitors inside polling sites and related correspondences with state and local officials. DOJ released all nonexempt responsive records. CREW claims that DOJ improperly redacted certain information from these releases.

The challenged withholdings are proper under FOIA Exemptions 5 and 7. Much of the redacted information involves ongoing investigations, conducted in anticipation of potential litigation, regarding violations of federal accessibility laws. Materials prepared by attorneys regarding anticipated litigation strategy and investigations as they relate to potential litigation are protected as attorney work product under Exemption 5. Predecisional litigation materials as well as predecisional discussions regarding potential staffing and locations of polling sites to be monitored are protected under the deliberative process privilege of Exemption 5. Additionally, information the disclosure of which is reasonably expected to interfere with CRT's investigations and poll monitoring are covered by Exemption 7(A). Personally identifying information, information regarding a confidential informant, and information about poll monitoring techniques and procedures are not subject to disclosure under Exemptions 7(C), 7(D), and 7(E), respectively. Accordingly, DOJ is entitled to summary judgment pursuant to Exemptions 5 and 7 of the FOIA.

**BACKGROUND**

CRT enforces federal voting rights laws that protect the voting rights of U.S. citizens across the country. *See* Press Release, *Justice Department to Monitor Polls in 24 States for Compliance with Federal Voting Rights Laws*, DOJ, Office of Public Affairs, Nov. 7, 2022, https://www.justice.gov/opa/pr/justice-department-monitor-polls-24-states-compliance-federal-voting-rights-laws (cited at Compl. ¶ 7 n.1, ECF No. 1). As part of this enforcement, CRT has regularly monitored elections in various jurisdictions since the passage of the Voting Rights Act of 1965. *See id.* The Voting Rights Section of CRT enforces provisions of the Voting Rights Act, the Overseas Citizens Absentee Voting Act, the National Voter Registration act, the Help America Vote Act, and the Civil Rights Act. *See id.* The Disability Rights Section of CRT enforces provisions of the Americans with Disabilities Act ("ADA") to ensure that persons with disabilities have an opportunity to vote. *See id.* On November 7, 2022, DOJ published a list of sixty-four jurisdictions, across twenty-four states, in which CRT planned to monitor compliance with federal voting rights laws during the 2022 midterm elections the following day. *See id.* Secretaries of State in Missouri and Florida rejected DOJ's request to allow federal elections monitors inside polling places in the listed jurisdictions within their states. *See* Patricia Mazzei & Glen Thrush, *Florida's Secretary of States Is Blocking Federal Monitors from Entering Polling Sites*, N.Y. Times, Nov. 8, 2022, https://www.nytimes.com/2022/11/08/us/politics/florida-federal-voting-monitors.html.

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") submitted the FOIA request at issue in this case, according to the Complaint, "[t]o shed light on how DOJ responded to the states' resistance to federal election oversight, as well as DOJ's policies and procedures for deploying election monitors where states have objected to such deployments."

Compl. ¶ 9. CREW's FOIA request, dated November 9, 2022, requests the following records from

January 1, 2022 to November 9, 2022:

1. All records relating to the deployment of DOJ personnel to monitor elections in Florida, including but not limited to any responsive communications with Florida state, county, or local officials.

2. All records relating to the deployment of DOJ personnel to monitor elections in Missouri, including but not limited to any responsive communications with Missouri state, county, or local officials.

3. All records relating to the deployment of DOJ personnel to monitor elections in any state (other than Florida and Missouri) that declined to authorize or otherwise objected to the presence of DOJ election monitors at or near polling places, including but not limited to any responsive communications with state, county, or local officials.

4. All DOJ policies, procedures, guidance, memoranda, or similar records concerning the deployment of DOJ election monitors to polling places where state, county, or local officials decline to authorize or otherwise object to the presence of DOJ election monitors at or near polling places.

Nov. 9, 2022 FOIA Request at 1, ECF No. 1 at 8.

CREW filed its Complaint on January 30, 2023, alleging that DOJ did not respond to the

FOIA request within the timeframe dictated by statute. *See* Compl. ¶ 19. DOJ filed an answer on

April 5, 2023. Answer, ECF No. 8. The parties thereafter negotiated a schedule for processing and

production of responsive records, *see* Joint Status Report (April 19, 2023), ECF No. 9, and DOJ

made its final production to CREW on August 30, 2023, *see* Joint Status Report (September 5,

2023), ECF No. 13. Responsive records were in the custody of the Voting Section ("VOT") and

the Disability Rights Section ("DRS"). *See id.*

CREW has challenged DOJ's withholdings from the productions made on August 30,

2023, under FOIA exemptions 5, 7(A), and 7(C), and the withholdings from the productions on

May 31, 2023, with the exception of names and telephone numbers redacted pursuant to FOIA

exemption 6. *See* Joint Status Report (Jan. 3, 2024), ECF No. 19.[1] The parties agreed to a briefing schedule for cross-motions for summary judgment to address these withholdings. *See id.*

**LEGAL STANDARDS**

The Freedom of Information Act contains "nine enumerated exemptions . . . designed to protect those 'legitimate governmental and private interests' that might be 'harmed by release of certain types of information.'" *August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003) (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)). These exemptions are necessary to strike the balance determined by Congress "between the right of the public to know and the need of the Government to keep information in confidence." *John Doe Agency*, 493 U.S. at 152-53 (citations omitted).

"Most FOIA cases are appropriately resolved on motions for summary judgment." *Gilliam v. DOJ*, 128 F. Supp. 3d 134, 138 (D.D.C. 2015) (citing *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011)). Summary judgment is warranted when an agency "demonstrates that no material facts are in dispute, [that] it has conducted an adequate search for responsive records, and [that] each responsive record that it has located has either been produced to the plaintiff or is exempt from disclosure." *Miller v. DOJ*, 872 F. Supp. 2d 12, 18 (D.D.C. 2012) (citing *Weisberg v. DOJ*, 627 F.2d 365, 368 (D.C. Cir. 1980)). Courts review agency responses to FOIA requests *de novo*. 5 U.S.C. § 552(a)(4)(B).

As to an agency's withholdings, a court may award summary judgment in a FOIA action solely on the basis of information provided by the agency through declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail," that

---

[1] CREW does not challenge the adequacy of the search for responsive records under FOIA, and therefore DOJ has carried its burden to conduct an adequate search.

"demonstrate that the information withheld logically falls within the claimed exemption[s]," and that are "not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (footnote omitted). Agency declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal citations omitted). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Jud. Watch, Inc. v. DOD*, 715 F.3d 937, 941 (D.C. Cir. 2013) (per curiam) (citation omitted).

**ARGUMENT**

Here, summary judgment for Defendant is appropriate because CRT's withholdings pursuant to FOIA Exemptions 5 and 7 are justified.

**I.    CRT Properly Withheld Information Pursuant to the Attorney Work-Product and Deliberative Process Components of FOIA Exemption 5.**

Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption ensures that members of the public cannot obtain through FOIA records that would be "normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). Accordingly, Exemption 5 "allows the government to withhold records from FOIA disclosure under at least three privileges: the deliberative-process privilege, the attorney-client privilege, and the attorney work-product privilege." *Nat'l Ass'n of Criminal Def. Lawyers v. Dep't of Justice Exec. Off. for U.S. Att'ys*, 844 F.3d 246, 249 (D.C. Cir. 2016). While CRT has endeavored to segregate the documents and release

5

as much information as possible to CREW, the remaining, withheld material is properly protected by the deliberative process and work product components of Exemption 5.

**A. CRT Properly Withheld Material Protected by the Attorney Work-Product Doctrine Created in Preparation for Potential Litigation, Including Litigation Strategy Information and Witness.**

CRT withheld limited information from its productions on attorney work-product grounds because the material comprised discussions developing litigation decisions, litigation strategy, and witness interviews for potential litigation for ADA violations.

"The attorney work product privilege 'shields materials prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).'" *Leopold v. DOJ*, 487 F. Supp. 3d 1, 10-11 (D.D.C. 2020) (quoting *McKinley v. Bd. of Governors of the Fed. Reserve Sys.*, 647 F.3d 331, 341 (D.C. Cir. 2011)). It protects "factual materials prepared in anticipation of litigation, as well as mental impressions, conclusions, opinions, and legal theories." *Heggestad v. DOJ*, 182 F. Supp. 2d 1, 8 (D.D.C. 2000) (citing *Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607, 620 (D.C. Cir. 1997)); *cf.* Fed. R. Civ. P. 26(b)(3) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).").

The purpose of the doctrine is to protect the adversarial litigation process by insulating attorneys' preparations from scrutiny. *See Jud. Watch, Inc. v. DHS*, 926 F. Supp. 2d 121, 142 (D.D.C. 2013) ("[T]he purpose of the privilege is to encourage effective legal representation within the framework of the adversary system by removing counsel's fears that his thoughts and information will be invaded by his adversary." (quoting *Jordan v. DOJ*, 591 F.2d 753, 775 (D.C.

Cir. 1978) (en banc)).  Accordingly, the attorney work-product doctrine "should be interpreted broadly and held largely inviolate." *Jud. Watch, Inc. v. DOJ*, 432 F.3d 366, 369 (D.C. Cir. 2005); *see also id.* at 369-70 ("[I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." (quoting *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)).  Were a lawyer's "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other [forms of attorney work product]" "open to opposing counsel on mere demand," then lawyers would have to avoid creating such materials and "[i]nefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. . . .   And the interests of the clients and the cause of justice would be poorly served." *Id.* at 370 (quoting *Hickman*, 329 U.S. at 510-11).

Here, the material withheld pursuant to the attorney work-product doctrine was prepared by and among CRT attorneys or among CRT attorneys and Assistant United States Attorneys ("AUSAs") from U.S. Attorneys' Offices ("USAOs"), satisfying Exemption 5's threshold requirement that withheld information be "inter-agency or intra-agency." *See* 5 U.S.C. § 552(b)(5); *see also Vaughn* Index, at 1.  The material was created in anticipation of litigation regarding ADA violations. *See id.* at 2. The withheld materials include "litigation and investigation updates detailing pending matters being handled by DRS, some in partnership with USAO, . . . in an ADA Title II voting violation case." *Id.*  The redacted portions of these documents provide "descriptions of case status, assessments of the matters discussed, arguments being set forth and recommended actions." *Id.* CRT redacted under the attorney work product doctrine information consisting of "evidence or results of investigations, site visits or interviews shared as part of a request or recommendation for legal action," including "USAO's evidence supporting" a

"proposed consent decree." *Id.* The names of the county or counties involved in these investigations have been redacted because the investigations are nonpublic. *See id.* at 3, 5. CRT also redacted the names of informants/potential witnesses, the substance of their complaints, potential questions for witnesses, and attorney impressions of the potential witness testimony should the cases go to trial. *See id.* at 6, 9; *see also id.* at 9 (information regarding potential expert witnesses was redacted). An "attorney's opinion of AUSA investigatory efforts" and "advice on CRT investigation strategy" was also redacted, *id.* at 8, as were attorneys' draft letters to county officials, *id.* at 9. This is classic attorney work-product material, the disclosure of which would reveal the mental impressions and preparations of attorneys and should therefore be kept confidential. *See Vaughn* Index, at 1 (describing the harm of disclosure).

Publicly revealing these materials would cause foreseeable harm by negatively affecting DOJ's ability to conduct investigations into violations of the ADA and other voting rights laws and to prepare for litigation. *See id.* at 1; Berman Decl. ¶¶ 5–6; 5 U.S.C. § 552(a)(8)(A)(i) (foreseeable harm requirement). "Disclosure of the substance of" the withheld attorney work product would "harm CRT's ability to freely exercise the kind of prosecutorial dynamic envisioned in the protections afforded to federal agencies for the currently active matters as well as for the prospective law enforcement proceedings for federal voting rights work and federal accessibility work." *Vaughn* Index, at 1. And here, the investigations concerning ADA violations are currently ongoing, with potential litigation anticipated, meaning that the "need to protect attorney work product is at its greatest." *Wisdom v. U.S. Tr. Program*, 266 F. Supp. 3d 93, 108 (D.D.C. 2017) (quoting *FTC v. Grolier Inc.*, 462 U.S. 19, 30 (1983) (Brennan, J., concurring in part)). Accordingly, courts in this circuit have recognized that withholding attorney work product protected material satisfies the foreseeable harm standard because disclosure would "indirectly

reveal the mental impressions, assessments, and thought processes of the attorneys involved in the investigation" which would "inhibit the flexibility" of attorneys to pursue future investigations. *Leopold*, 487 F. Supp. 3d at 10 n.4.

> **B. CRT Also Properly Withheld Information Protected by the Deliberative Process Privilege That Would Reveal CRT's Deliberative Process in Making Decisions About Election Monitoring, Investigations, and Litigation.**

CRT also withheld limited information pursuant to the deliberative process privilege because the disclosure of the information would reveal CRT's deliberative process in making decisions about election monitoring, investigations into violations of voting rights laws and accessibility laws, and potential litigation.

The deliberative process privilege protects "materials that would reveal advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (citation omitted). "The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Dep't of Interior v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1, 8– 9 (2001) (citations omitted); *accord Jud. Watch, Inc. v. DOJ*, 20 F.4th 49, 54 (D.C. Cir. 2021). The privilege also "protects the public from the confusion that would result from premature exposure to discussions occurring before" a final decision has been made and ensures "the integrity of the decision-making process itself by confirming that officials should be judged by what they decided, not for matters they considered before making up their minds." *Russell v. Dep't of Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982) (quotation marks, alterations, and citation omitted).

To come within the scope of the deliberative process privilege, a document must be both predecisional and deliberative. *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 866 (D.C. Cir. 1980). A document is predecisional if "it was generated before the adoption of an agency policy," and it is deliberative if "it reflects the give-and-take of the consultative process." *Id.* "To establish that a document is predecisional, the agency need not point to an agency final decision, but merely establish what deliberative process is involved, and the role that the documents at issue played in that process." *Jud. Watch Inc. v. Exp.-Imp. Bank*, 108 F. Supp. 2d 19, 35 (D.D.C. 2000) (citing *Formaldehyde Inst. v. HHS*, 889 F.2d 1118, 1123 (D.C. Cir. 1989)). Accordingly, "even if an internal discussion does not lead to the adoption of a specific government policy, its protection under Exemption 5 is not foreclosed as long as the document was generated as part of a definable decision-making process." *Gold Anti-Tr. Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 135-36 (D.D.C. 2011) (citation omitted). When evaluating deliberative process claims, courts "must give considerable deference to the agency's explanation of its decisional process, due to the agency's expertise in determining what confidentiality is needed to prevent injury to the quality of agency decisions, while the decisionmaking process is in progress." *Pfeiffer v. CIA*, 721 F. Supp. 337, 340 (D.D.C. 1989) (citation omitted).

"Determining whether a document is deliberative is less straightforward than determining whether it is predecisional in part because of the sheer variety of ways in which a document can be deliberative." *Jud. Watch, Inc.*, 20 F.4th at 55. In determining whether the privilege applies, courts consider "what deliberative process is involved," "the role played by the documents in issue in the course of that process," the "nature of the decisionmaking authority vested in the officer or person issuing the disputed document," and the "relative positions in the agency's chain of command occupied by the document's author and recipient." *Id.* (citations omitted). Although

"draft documents" are not "per se exempt," they are covered by the deliberative process privilege if they are "deliberative in nature." *Id.*

The material CRT withheld pursuant to the deliberative process privilege is both predecisional and deliberative. CRT withheld communications among CRT attorneys and AUSAs regarding the locations of polling sites to be monitored and potential lists of staff to send as monitors, including which components those staff would come from. *See Vaughn* Index, at 3. The redactions also included a "discussion of factors needed before" decisions about assigning monitors "can be finalized." *Id.* Because the material was prepared by and among CRT attorneys AUSAs, Exemption 5's threshold requirement that withheld information be "inter-agency or intra-agency" is satisfied. *See* 5 U.S.C. § 552(b)(5); *see also Vaughn* Index, at 1. This material is predecisional because it preceded DOJ's ultimate decision of which elections monitors to send to which polling sites. This information formed an integral part of CRT's process for coordinating election monitoring for the midterm elections and is therefore deliberative as well. The deliberative nature of these documents is underscored by the fact that the attorneys who created them are not high-level government decisionmakers. *See Jud. Watch, Inc.*, 20 F.4th at 55; *Vaughn* Index, at 14. Moreover, the information reveals "CRT monitoring efforts and enforcement capacity." *Vaughn* Index, at 3.

CRT also withheld under the deliberative process privilege information pertaining to pending investigations and potential litigation. *See id.* at 2. For example, portions of internal DRS reports on the investigations pertaining to ADA violations were redacted because those portions "request[] or await[] approval to initiate new or additional law enforcement activities such as lawsuits or consent decrees as well as extensions of supervision," and the reports are provided to officials in DOJ "for awareness and potential input." *Id.*; *see also id.* at 5 (denoting that draft

communications to county officials withheld under the deliberative process privilege); *id.* at 6 (communications between attorneys concerning "legal options and potential next steps" withheld under deliberative process privilege). "Investigations were not disclosed to the public until a public action was taken such as issuing a letter of findings, entering into a settlement agreement, or filing a complaint in federal court." *Id.* at 2. Because the withheld materials were generated before such disclosure, they are predecisional. And they are likewise deliberative because they demonstrate interim steps taken by CRT attorneys and AUSAs to obtain internal approval within DOJ to take certain actions. Accordingly, these records formed "an integral part of [the agency's] deliberative process," and are exempt from disclosure. *Ryan v. DOJ*, 617 F.2d 781, 789 (D.C. Cir. 1980).

CRT additionally withheld "[d]eliberative discussion between CRT attorneys and DOJ's Public Affairs Office regarding DOJ response to press inquiries" about states that decline to allow election monitors in polling places, including "proposed responses to questions." *Vaughn* Index, at 11. This materials is predecisional, coming before any formal response to press inquiries, and deliberative, demonstrating DOJ's process by which it determines how to respond to such inquiries.

Requiring CRT to disclose the withheld material would frustrate the purpose of the deliberative process privilege and cause foreseeable harm. As the Supreme Court has long recognized, "those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decision making process." *Sears, Roebuck & Co.*, 421 U.S. at 150–51 (quoting *United States v. Nixon*, 418 U.S. 683, 705 (1974)). The deliberative process privilege thus protects agencies from "operat[ing] in a fishbowl," and preserves "the frank exchange of ideas and opinions" that is necessary for effective decision making. *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 462 (D.C. Cir. 2014) (quoting *Dudman*

*Commc'ns. Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1567 (D.C. Cir. 1987)). Here, disclosing the withheld information would chill CRT's ability to engage in deliberations about election monitoring, investigations, and litigation strategy, and would "harm CRT's ability to freely exercise the kind of prosecutorial dynamic envisioned in the protections afforded to federal agencies for the currently active matters as well as for prospective law enforcement proceedings for federal voting rights work and federal accessibility work." *Vaughn* Index, at 1; *see* Berman Decl. ¶¶ 5–6. Disclosure of deliberations about staffing of poll monitors and locations to be monitored, prior to a final decision, could discourage CRT from considering new or different polling sites or staffing positions in the future. And disclosure deliberations about investigations could discourage CRT from conducted thorough investigations into voting rights violations or accessibility rights violations. Disclosure of deliberations about responses to press inquiries would effectively turn the deliberations themselves into public responses, thereby harming CRT's ability to provide reasoned responses to the press about election monitoring. At bottom, the disclosure of the sensitive information that CREW seeks would cause foreseeable harm by impairing the government decisionmaking that the deliberative process privilege is meant to protect.

## II. CRT Properly Withheld Information Pursuant to the Exemptions 7(A), (C), (D), and (E).

FOIA Exemption 7 permits agencies to withhold "records or information compiled for law enforcement purposes," provided that the release of such records or information would satisfy any one of six enumerated conditions. 5 U.S.C. § 552(b)(7)(A)-(F); *see also Pub. Emps. for Envt'l Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.*, 740 F.3d 195, 202-03 (D.C. Cir. 2014). "To determine whether records are compiled for law enforcement purposes, [the D.C. Circuit] has long emphasized that the focus is on how and under what circumstances the requested files were compiled and whether the files sought relate to anything that can fairly be characterized

as an enforcement proceeding." *Clemente v. FBI*, 867 F.3d 111, 119 (D.C. Cir. 2017) (citation omitted). Thus, to show that the information was compiled for a law enforcement purpose, the agency need only establish that "the investigatory activity that gave rise to the documents is 'related to the enforcement of federal laws,' and there is a rational nexus between the investigation at issue and the agency's law enforcement duties." *Jefferson v. DOJ, Off. of Pro. Resp.*, 284 F.3d 172, 177 (D.C. Cir. 2002) (quoting *Pratt v. Webster*, 673 F.2d 408, 420-21 (D.C. Cir. 1982)). "Because the DOJ is an agency specializ[ing] in law enforcement, its claim of a law enforcement purpose is entitled to deference." *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 926 (D.C. Cir. 2003) (citation omitted). Moreover, information originally compiled for a law enforcement purpose does not lose protection under Exemption 7 when it is recompiled into a different record for administrative or FOIA processing purposes. *See FBI v. Abramson*, 456 U.S. 615, 631–32 (1982) ("[I]nformation initially contained in a record made for law enforcement purposes continues to meet the threshold requirements of Exemption 7 where that recorded information is reproduced or summarized in a new document for a non-law-enforcement purpose."); *Citizens for Resp. & Ethics in Wash. v. DOJ*, No. 20-cv-0212, 2022 WL 4598537, at *5 (D.D.C. Sept. 30, 2022) ("*CREW*") (Exemption 7 applied to information "store[d] elsewhere" that was compiled into spreadsheets to fulfill FOIA request).

The materials withheld under Exemption 7 were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). Most of the withheld records relate to investigations of ADA Title II voting violations that have not been disclosed publicly. *See generally Vaughn* Index. A few items were also withheld because they relate to issues with poll monitoring plans in various states. *See id.* at 12–13. CRT is tasked with monitoring elections and enforcing federal voting rights laws and accessibility laws. *See id.* at 1. Accordingly, there is a clear connection between the withheld

information, CRT's investigations, and CRT's law enforcement duties. *See, e.g.*, *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 926 (names of detainees held in connection with September 11 terrorism investigation were compiled for law enforcement purpose); *CREW*, 2022 WL 4598537, at *5 (records containing information about staffing details of special counsel investigation, including identities of personnel, had sufficient nexus to DOJ's law enforcement duties and investigation into possible violations of federal law).

### A. CRT Properly Withheld Information Under Exemption 7(A).

Exemption 7(A) protects records or information "compiled for law enforcement purposes" when disclosure "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). As the D.C. Circuit has explained, "Exemption 7(A) reflects the Congress's recognition that 'law enforcement agencies ha[ve] legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it [comes] time to present their case.'" *Citizens for Resp. & Ethics in Wash. v. DOJ*, 746 F.3d 1082, 1096 (D.C. Cir. 2014) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978)). "To justify withholding, [an agency] must therefore demonstrate that 'disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated.'" *Id.* (quoting *Mapother v. DOJ*, 3 F.3d 1533, 1540 (D.C. Cir. 1993)). When assessing the first prong of this analysis, courts must "'give deference to an agency's predictive judgment of the harm that will result from the disclosure of information.'" *Cable News Network, Inc. v. FBI*, 298 F. Supp. 3d 124, 129 (D.D.C. 2018) (quoting *Citizens for Resp.*, 746 F.3d at 1098). The latter two prongs typically may be satisfied by pointing to a pending investigation or proceeding. *See Citizens for Resp.*, 746 F.3d at 1098.

The withheld materials satisfy the latter two prongs of the Exemption 7(A) analysis. These materials all pertain to either investigations of ADA Title II voting violations that have not been

disclosed publicly or to issues with poll monitoring plans in various states. *See generally Vaughn* Index. The investigations and potential litigation remain ongoing. And these records were created prior to the election monitoring for the 2022 midterm elections, and enforcement via poll monitoring was then still pending; moreover, CRT generally conducts poll monitoring for elections at least every two years, so similar enforcement proceedings are likely to occur in 2024 as well.

CRT reasonably determined that disclosing this information would reveal non-public details about the scope, nature, and direction of the CRT's ongoing investigative and enforcement efforts. "[D]escriptions of case status, assessments of the matters discussed, arguments being set forth and recommended actions" were withheld because the investigations "were not disclosed to the public until a public action was taken such as issuing a letter of findings, entering into a settlement agreement, or filing a complaint in federal court." *Id.* at 2; *see also id.* at 5 (withholding under Exemption 7(A) information regarding informants related to investigations); *id.* at 7 (withholding witness information that would comprise the testimony of the witness if the case went to trial). CRT's investigations concern whether state and local government entities that conduct voter registration and election activities are in compliance with the requirements set forth in federal voting rights laws and accessibility laws. *Id.* at 1. These investigations "are also generally aimed at structural compliance issues that occur across a number of election cycles. As a consequence, CRT's investigations often stretch across a number of years and multiple election cycles before reaching a resolution as to whether enforcement action is necessary." *Id.*; *see Swan v. SEC*, 96 F.3d 498, 500 (D.C. Cir. 1996) (upholding assertion of Exemption 7(A) where disclosure "could reveal much about the focus and scope of the Commission's investigation"). Disclosure of that information could reasonably be expected to interfere with the CRT's ongoing efforts, as it may deter informants from participating or reveal non-public aspects of the

16

investigations in advance of litigation. *See Vaughn* Index at 1; *See Alyeska Pipeline Serv. Co. v. U.S. EPA*, 856 F.2d 309, 312 (D.C. Cir. 1998) (upholding assertion of Exemption 7(A) where agency declaration explained that disclosure "would prematurely reveal . . . the size, scope and direction of this investigation" (cleaned up)); *see also Boyd v. Crim. Div. of U.S. DOJ*, 475 F.3d 381, 386 (D.C. Cir. 2007) (same).

CRT also reasonably determined that the withheld information concerning poll monitoring could interfere with future enforcement proceedings. Information about potential lists of potential staff serving as election monitors in potential polling sites, could "reveal[] CRT monitoring efforts and enforcement capacity." *Vaughn* Index, at 3. Observation of compliance issues often occurs "across a number of election cycles," *id.* at 1, so information pertaining to issues and staffing capacity for poll monitoring in a given election cycle could reasonably be expected to affect future poll monitoring if disclosed. *See CREW*, 2022 WL 4598537, at *7 (DOJ properly withheld information about salaries of members of special counsel review team, as disclosure "would provide the number of members of the Review," which "could reveal at least the scope of the investigation").

Accordingly, CRT properly determined that release of the records responsive to CREW's request could reasonably be expected to interfere with the CRT's ongoing efforts. For the same reasons, it determined that it was reasonably foreseeable that disclosure would harm interests protected under Exemption 7(A). *See* 5 U.S.C. § 552(a)(8); *see Vaughn* Index at 1 (describing the foreseeable harm of disclosure of this information, noting that "[t]hese actions are part of CRT's normal enforcement duties and within its statutory jurisdiction," and "[t]hese documents relate to concrete, prospective law enforcement proceedings against the States and ongoing active law enforcement investigations"); Berman Decl. ¶¶ 3–4, 6.

**B. CRT Properly Withheld Information Under Exemption and 7(C).**

CRT also properly withheld certain personally identifiable information pursuant to FOIA

Exemptions 7(C). Exemption 7(C) protects "records or information compiled for law enforcement

purposes [when disclosure] . . . could reasonably be expected to constitute an unwarranted invasion

of personal privacy." 5 U.S.C. § 552(b)(7)(C). In the FOIA context, personal privacy interests are

of particular significance because a disclosure required by the FOIA is a disclosure to the public.

*See Painting & Drywall Work Pres. Fund, Inc. v. Dep't of Hous. & Urb. Dev.*, 936 F.2d 1300,

1302 (D.C. Cir. 1991) (if information "must be released to one requester, it must be released to all,

regardless of the uses to which it might be put"). The Supreme Court has rejected a "cramped

notion of personal privacy" and instead emphasized that "privacy encompass[es] the individual's

control of information concerning his or her person." *DOJ v. Reps. Comm. For Freedom of Press*,

489 U.S. 749, 763 (1989).[2]

In applying Exemptions 7(C), agencies must determine whether disclosure of the

information threatens a protectable privacy interest and, if so, must then weigh that interest against

any public interest in disclosure. *See Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991); *see*

---

[2] FOIA Exemption 6 protects from disclosure information contained in "personnel and medical files and similar files" when the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(6). Exemption 6 and Exemption 7(C) overlap extensively, *see Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991), although Exemption 6 does not require a law enforcement purpose. Where material is withheld under both Exemption 6 and 7(C), its withholding is proper as long as it meets the "somewhat broader" Exemption 7(C) standard, which requires only a reasonable expectation of an invasion of personal privacy, as opposed to Exemption 6's standard, which requires a "clearly unwarranted" invasion of personal privacy. *See DOJ v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989); *see also Jud. Watch, Inc. v. DOJ*, 394 F. Supp. 3d 111, 117 (D.D.C. 2019) ("When an agency invokes both Exemption 6 and 7(C), courts 'focus' on Exemption 7(C) because it 'establishes a lower bar for withholding material.'" (quoting *Citizens for Resp.*, 746 F.3d at 1091 n.2)). This brief focuses on Exemption 7(C)'s applicability to the withheld information, although some or all of this information could also be properly withheld under Exemption 6.

*also Reps. Comm.*, 489 U.S. at 762; *Niskanen Ctr. v. Fed. Energy Regul. Comm'n*, 20 F.4th 787, 791 (D.C. Cir. 2021) (recognizing "the privacy interest in an individual's name and address"). The "only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of the FOIA, which is contribut[ing] significantly to the public understanding of the operations or activities of the government." *DOD v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 495 (1994) (citation omitted). Plaintiff bears the burden of making that showing. *See Carter v. U.S. Dep't of Com.*, 830 F.2d 388, 390-91 nn.8 & 13 (D.C. Cir. 1987).

CRT withheld, pursuant to Exemption 7(C), personally identifying information about local government officials, *see Vaughn* Index, at 5, names, home addresses, email addresses, and telephone numbers of witnesses and informants, *id.* at 7–8, and names of potential expert witnesses, *id.* at 9.

CRT properly invoked Exemption 7(C) to withhold this information. CRT properly determined that disclosure of the identities of these individuals would constitute an unwarranted invasion of privacy. Due to the public scrutiny surrounding matters of voting rights laws and accessibility laws, disclosure of the identities of nonpublic individuals would create a substantial risk that these individuals could become targets of harassment and threats. *Touarsi v. DOJ*, 78 F. Supp. 3d 332, 347 (D.D.C. 2015) ("FOIA's general goal of government oversight is insufficient to obtain the names of individuals contained in law enforcement records."); *CREW*, 2022 WL 4598537, at *8 (endorsing DOJ explanation that disclosure "could subject these individuals to harassment and to questioning as to the scope of their involvement in the ongoing investigations" (citation omitted)).

Accordingly, CRT properly concluded that the public interest in disclosure did not outweigh the substantial privacy interest in the withheld information and that it was reasonably

foreseeable that disclosure would cause harm. *See* 5 U.S.C. § 552(a)(8); *see Vaughn* Index at 1 (describing the foreseeable harm of disclosure of this information, noting that "[t]hese actions are part of CRT's normal enforcement duties and within its statutory jurisdiction," and "[t]hese documents relate to concrete, prospective law enforcement proceedings against the States and ongoing active law enforcement investigations"); Berman Decl. ¶¶ 3–4, 6.

## C. CRT Properly Withheld Information Under Exemption 7(D).

CRT withheld, under Exemption 7(D), information about a confidential source regarding an ongoing investigation. *See Vaughn* Index at 7–8. Exemption 7(D) excludes from the FOIA's requirements law enforcement records that "could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency . . . which furnished information on a confidential basis." 5 U.S.C. § 552(b)(7)(D). For material to qualify as exempt from the FOIA under Exemption 7(D), the defendant must "show[] that [its] sources provided information either under an express assurance of confidentiality or under circumstances in which an assurance of confidentiality can reasonably be inferred." *Nishnic v. DOJ*, 671 F. Supp. 776, 793–94 (D.D.C. 1987); *Lesar v. DOJ*, 636 F.2d 472, 490 (D.C. Cir. 1980) (if source "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred . . . the agency can withhold the names, addresses, and other information that would reveal the identity of a confidential source . . . ."). In other words, "Exemption 7(D) differs from other FOIA exemptions in that its applicability depends not on the specific factual contents of a particular document; instead, the pertinent question is whether the information at issue was furnished by a 'confidential source' during the course of a legitimate criminal law investigation." *Prop. of the People, Inc. v. DOJ*, 539 F. Supp. 3d 16, 27 (D.D.C. 2021) (citation omitted); *see also DOJ v. Landano*, 508 U.S. 165, 172 (1993) ("Under Exemption 7(D), the question is not whether the requested *document* is of the type that the agency usually

treats as confidential, but whether the particular *source* spoke with an understanding that the communication would remain confidential." (emphasis in original)). Thus, the propriety of the Exemption is satisfied where "the Government has provided affidavits supporting its claim that the foreign government at issue 'provided information under an express assurance of confidentiality' during the course of a cooperative investigation." *Prop. of the People, Inc.*, 539 F. Supp. 3d at 27 (quoting *Landano*, 508 U.S. at 172).

Here, CRT withheld, under Exemption 7(D), information from an email chain between a CRT attorney and a confidential source regarding a complaint in a county that is part of a nonpublic, ongoing ADA Title II voting investigation. *See Vaughn* Index at 7–8. The redacted information consists of the sources' personally identifiable information and the substance of the complaint that would comprise the testimony of the source if he or she were a witness at a trial. *See id.* An assurance of confidentiality can be reasonably inferred in these circumstances. The informant was communicating with an attorney from CRT about the complaint, and the informant could infer that the conversation and his or her identity would not be publicly disclosed. This information is therefore protected from disclosure under Exemption 7(D).

CRT properly determined that release of the information could reasonably be expected to interfere with the CRT's ongoing investigation and harm its ability to work with confidential informants in the future. For the same reasons, CRT determined that it was reasonably foreseeable that disclosure would harm interests protected under Exemption 7(D). *See* 5 U.S.C. § 552(a)(8); *see Vaughn* Index at 1 (describing the foreseeable harm of disclosure of this information, noting that "[t]hese actions are part of CRT's normal enforcement duties and within its statutory jurisdiction," and "[t]hese documents relate to concrete, prospective law enforcement proceedings against the States and ongoing active law enforcement investigations"); Berman Decl. ¶¶ 3–4, 6.

### D. CRT Properly Withheld Information Under Exemption 7(E).

FOIA Exemption 7(E) exempts from disclosure law enforcement records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations . . . if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Agencies face a "low bar" in justifying nondisclosure under Exemption 7(E). *Shapiro v. DOJ*, Civ. A No. 12-cv-0313 (BAH), 2020 WL 3615511, at *40 (D.D.C. July 2, 2020). For example, "revealing [a low enforcement agencies'] points of focus in the particular investigations would necessarily reveal its techniques and procedures." *Reps. Comm. For Freedom of Press v. FBI*, No. 17-cv-1701-RC, 2022 WL 13840088, at *8 (D.D.C. Oct. 21, 2022); *see also Shapiro*, 2020 WL 3615511, at *40 (finding FBI was entitled to protect investigative focus of specific investigations under Exemption 7(E)); *Poitras v. U.S. Dep't of Homeland Sec.*, 303 F. Supp. 3d 136, 159 (D.D.C. 2018) (same); *Amuso v. DOJ*, 600 F. Supp. 2d 78, 101 (D.D.C. 2009) (same).

Here, CRT withheld under Exemption 7(E) a reference in an email chain to "a particular technique/process related to enforcement of poll monitoring," *Vaughn* Index at 11, and discussions in an email chain about "DOJ techniques and procedures for coordination of poll monitoring," *id.* at 13. This information clearly meets the requirement that it would "disclose techniques and procedures for law enforcement investigations or prosecutions." 5 U.S.C. § 552(b)(7)(E).

Further, disclosure of each of these withholdings "could reasonably be expected to risk circumvention of the law." *Id.* As the D.C. Circuit has explained, this "exemption is written in broad and general terms." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009). It thus "clearly protects information that would *train* potential violators to evade the law or *instruct* them how to break the law. But it goes further [and] . . . exempts from disclosure information that could *increase the risks* that a law will be violated or that past violators will escape legal consequences."

22

*Id.* (emphasis in original). Revealing the withheld information to CRT's investigative targets would alert them to CRT's interest in their activities, allowing them to take active measure to conceal violations of federal voting rights laws or accessibility laws. Release of any of this protected information about poll monitoring techniques and procedures could lead to circumvention of the law. For the same reasons, CRT determined that it was reasonably foreseeable that disclosure would harm interests protected under Exemption 7(E). *See* 5 U.S.C. § 552(a)(8); *see Vaughn* Index at 1 (describing the foreseeable harm of disclosure of this information, noting that "[t]hese actions are part of CRT's normal enforcement duties and within its statutory jurisdiction," and "[t]hese documents relate to concrete, prospective law enforcement proceedings against the States and ongoing active law enforcement investigations"); Berman Decl. ¶¶ 3–4, 6.

## III.    CRT Properly Released All Reasonably Segregable Information.

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b).  But an agency need not disclose records in which the nonexempt information remaining is meaningless.  *See Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 220-21 (D.D.C. 2005).  "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).  And a court "may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Juarez v. DOJ*, 518 F.3d 54, 61 (D.C. Cir. 2008).

In addition, segregation between factual and deliberative material is not required when material is protected by the attorney work-product doctrine.  Indeed, "[a]ny part of [a document]

prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5." *Jud. Watch, Inc. v. DOJ*, 432 F.3d at 371 (quoting *Tax Analysts*, 117 F.3d at 620).  Nonetheless, in the interests of transparency, CRT has endeavored to release the greatest amount possible of each responsive record, generally choosing to produce redacted versions rather than withhold material in full.  CRT conducted a careful review of each record and released all information that could be segregated out and disclosed.  Defendant has therefore complied with its segregability obligations.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant it summary judgment on all of the claims in the Complaint.

Dated:  February 29, 2024             Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

*/s/ Michael P. Clendenen*
MICHAEL P. CLENDENEN
(D.C. Bar # 1660091)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Tel: (202) 353-0693
Fax: (202) 616-8460
Email: michael.p.clendenen@usdoj.gov

*Counsel for Defendant*

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 29th day of February, 2024, I caused the foregoing document to be served on counsel for plaintiff by filing with the court's electronic case filing system.

<u>/s/ Michael P. Clendenen</u>
MICHAEL P. CLENDENEN